# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NITA SPARKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  05-CV-290-SAJ |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2] Plaintiff asserts that the Commissioner erred because the Commissioner failed to seek the advice of a medical expert in determining Plaintiff's onset date. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision for further proceedings with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

The ALJ issued a partially favorable decision for Plaintiff. Plaintiff was granted benefits beginning January 1, 2004, but denied benefits from March 13, 2002 (Plaintiff's alleged onset date) through December 31, 2003. Plaintiff appeals the decision that she was not disabled at anytime from March 13, 2002 through December 31, 2003.

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2] Administrative Law Judge Jeffrey S. Wolfe (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated December 17, 2004. [R. at 12 - 28]. Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on April 6, 2005. [R. at 7].

Plaintiff noted that she suffers from high blood pressure, varicose veins, stasis in her ankles, edema in her legs, allergies, and arthritis. [R. at 104]. Plaintiff completed a form indicating how her conditions affected her. [R. at 104]. Plaintiff wrote that she was unable to climb a flight of stairs. [R. at 104].

Plaintiff completed a written form describing her average day. [R. at 113]. Plaintiff wrote that she usually drinks coffee each morning, and reads the employment ads looking for part-time work. [R. at 113]. Plaintiff cleans the kitchen and eats leftovers or fixes a sandwich for lunch. Plaintiff reads and watches television shows. [R. at 113]. Plaintiff noted that she was unable to shop. [R. at 113]. According to Plaintiff, she finds sleep difficult when she is experiencing pain. Plaintiff lives with her sister and her sister's fiance. [R. at 113]. Plaintiff is able to dress and bathe herself. [R. at 114].

On her medications list, Plaintiff noted that she takes medications for depression, thyroid imbalance, spasms, blood pressure, asthma, and Ibuprofin for pain. [R. at 128].

Richard Marple, M.D., wrote a letter on Plaintiff's behalf on August 25, 1989. [R. at 130]. He noted Plaintiff had hypertension which had not been treated. Plaintiff was obese at 5'6" and 225 pounds. [R. at 130]. Plaintiff had chronic venous insufficiency with swelling involving her lower extremities. Plaintiff was working at a convenience store which required significant standing resulting in swelling in her lower extremities. [R. at 130]. Plaintiff had chronic asthmatic bronchitis but was able to walk without dyspnea. [R. at 130]. Plaintiff had sciatica involving her right lumbosacral region and radiating to her lateral thigh, leg, and foot. [R. at 130]. Plaintiff had pain in her hips and knees with prolonged standing. [R. at 131]. Plaintiff's doctor noted that Plaintiff suffered from multiple medical problems leading to a significant disability. According to the doctor, all of Plaintiff's problems would

improve with weight reduction. [R. at 132]. The doctor noted that Plaintiff should be able to do sedentary activity as long as she was not required to stand for a prolonged period of time. [R. at 132].

Plaintiff was seen on January 29, 2002, complaining of chest palpitations and chest pain. [R. at 145]. Plaintiff had outpatient cardiac ablation on March 14, 2002. Later that day she was seen in the hospital for swelling associated with her thigh. [R. at 158]. Plaintiff was admitted March 18, 2002, with complaints of pain and swelling in her left thigh. [R. at 150].

On May 8, 2003, Plaintiff was examined by Moses A. Owoso, M.D. [R. at 159]. Plaintiff had multiple complaints including back pain, weakness, neck pain, jaw pain, hand and elbow pain. [R. at 159]. Plaintiff had stents in January 2002 and March 2002 for coronary artery disease. Since that time Plaintiff stated she had not had any chest pain for over one year. [R. at 159]. Plaintiff did complain of radiating back pain, leg pain, and ankle pain. Plaintiff also stated she had been diagnosed with depression and was on anti-depressants. [R. at 159]. Plaintiff was described as obese but in no distress. [R. at 159]. Plaintiff exhibited no peripheral edema, cyanosis or clubbing. [R. at 160]. Plaintiff did have a dusky appearance in her lower legs with varicose veins. [R. at 160]. Plaintiff's dexterity was normal as was the examination of her major joints, upper and lower extremities, and grip. [R. at 160]. Plaintiff's gait was balanced and stable without assistive device. [R. at 161]. Plaintiff got onto and off of the exam table independently. [R. at 161]. Plaintiff exhibited good coordination, and was able to sit, and stand normally. [R. at 161]. Plaintiff's cervical and dorsolumbar spine and her upper extremities were normal. [R. at 161]. The doctor completed a range-of-motion chart for Plaintiff, noting some limitation in Plaintiff's

back flexion and extension, small limitation in Plaintiff's hip rotation. [R. at 162]. The doctor noted Plaintiff could effectively oppose the thumb to the finger tip and manipulate small objects. [R. at 164]. Plaintiff complained of chest pain on May 8, 2003, although she noted no chest pain in the prior year. [R. at 166].

Plaintiff was examined by Michael D. Morgan, Psy.D., on May 19, 2003. [R. at 167]. Plaintiff drove herself to the examination. [R. at 167]. Plaintiff reported having been first treated for panic attacks in March 2002. Plaintiff was taking Lexapro at the time of her examination. [R. at 167]. Plaintiff reported taking care of all of her personal grooming needs. [R. at 168]. Plaintiff had signs and symptoms consistent with depression. Plaintiff's thought process was overabundant. Plaintiff was at the high-average range of intelligence. [R. at 169]. Plaintiff was noted as having a major depressive disorder and a generalized anxiety disorder. Plaintiff's GAF was 35-40. [R. at 170]. The examiner noted that with appropriate psychotherapy and medication Plaintiff could be restored to employability in two to three years. [R. at 170].

On April 29, 2003, Plaintiff's doctor recommended a low fat and low calorie diet and urged Plaintiff to regularly exercise. [R. at 205].

A Physical Residual Functional Capacity Assessment was completed May 21, 2003 by Thurma Fiegel, M.D. [R. at 174]. Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand or walk six hours in an eight hour day and sit six hours in an eight hour day. [R. at 173]. A Physical Residual Functional Capacity Assessment form was completed September 26, 2003. Plaintiff was noted as being able to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk six hours in an eight hour day, and sit six hours in an eight hour day. [R. at 242].

A Psychiatric Review Technique form was completed by Janice B. Smith, Ph.D. on July 7, 2003. She noted that Plaintiff's impairment was not severe. [R. at 225]. Plaintiff was noted as having a mild restriction of activities of daily living, mild difficulties in social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of repeated decompensation. [R. at 235]. A second form was completed by R.E. Smallwood, Ph.D., on September 26, 2003 with similar findings. [R. at 249].

A Medical Source Opinion regarding Plaintiff's Residual Functional Capacity was completed April 8, 2004. Plaintiff was noted as being able to perform sedentary work for three hours during an eight hour day. [R. at 264]. Plaintiff was designated a "class 2" patient which was defined as a patient with cardiac disease resulting in slight limitation of physical activity. Plaintiff would be comfortable at rest but ordinary physical activity would result in undue fatigue, palpitation, dyspnea or anginal pain. [R. at 264]. The doctor noted that it was medically necessary for Plaintiff to elevate both of her legs on a continual basis. [R. at 265].

A Mental Medical Source Statement was completed November 1, 2004 by Dennis A. Rawlings, Ph.D. [R. at 299]. He noted that Plaintiff had moderate limitations in the ability to carry out detailed instructions, maintain attention, perform activities within a schedule, sustain an ordinary routine without special supervision, and interact with the general public. [R. at 297].

During an exam on June 2, 2004, x-rays were interpreted as indicating moderate to severe multilevel degenerative changes of Plaintiff's lumbar spine with mild retrolisthesis of the L3. Plaintiff had extensive atherosclerosis of the abdominal aorta. [R. at 289]. X-rays of Plaintiff's neck indicated no evidence of fracture. [R. at 291].

Plaintiff testified at a hearing before the ALJ on November 10, 2004. [R. at 326]. Plaintiff worked until March of 2002 when she was hospitalized for treatment. Plaintiff did not return to work after her surgery. [R. at 334].

Plaintiff stated that she was unable to work due to the pain in her back which is continuous. Plaintiff also noted she has continuous pain in her left leg and that she is unable to walk up and down stairs. [R. at 345]. Plaintiff stated she has depression from her pain. [R. at 345]. Plaintiff also noted she has anxiety. [R. at 345]. Plaintiff suffers from asthma and allergies. Plaintiff also has difficulty with soreness in her hands and is unable to write or keyboard. Plaintiff has a pinched nerve in her right arm and her feet and ankles swell. [R. at 346]. Plaintiff cannot sit for long periods of time because of the pain in her lower back and pelvic area. [R. at 347]. Plaintiff's leg swells if she is on her feet for too long or if she sits for extended periods of time. [R. at 348].

During the hearing Plaintiff stood to walk and relieve her pain from sitting. [R. at 347]. Plaintiff sits in a recliner to elevate her feet to reduce the edema. [R. at 348]. During an eight hour day Plaintiff sits with her feet elevated about 65% of the time. [R. at 349]. Plaintiff began doing this after her surgeries.

Plaintiff believes she can walk for only about ten or fifteen minutes before having to sit down. [R. at 350]. Plaintiff walks with a cane. [R. at 350]. After walking, Plaintiff is tired and begins to hurt.

Plaintiff believes she could stand for ten to fifteen minutes before needing to sit. [R. at 351]. Plaintiff cleans her apartment, but she cleans incrementally. She can clean the bathtub and the sink one day, and the next day run the sweeper. [R. at 352].

Plaintiff does her laundry at the laundromat and is exhausted when she is done. [R. at 353]. Plaintiff shops for groceries, but she has to stay in bed the day after she shops for groceries because she is exhausted. [R. at 354]. Plaintiff can lift ten pounds. [R. at 355].

Plaintiff's depression interferes with her concentration. [R. at 355]. Plaintiff has about two or three good days each week. Plaintiff also noted that she suffers from numbness in her feet which has led her to break four of the toes in her foot. [R. at 358].

Plaintiff tries to walk each day for about 20 minutes. [R. at 362]. Plaintiff walks inside. [R. at 362]. Plaintiff lives alone and drives about once or twice each month to get groceries and visit the doctor. [R. at 363]. Plaintiff lived with her sister until July 2004 but her sister married and Plaintiff moved out to live on her own. [R. at 366].

At the hearing, Dr. Dennis Rawlings, a clinical psychologist testified. [R. at 374]. According to Dr. Rawlings, Plaintiff suffered from three psychiatric disorders. Plaintiff has long-term chronic anxiety disorder, which is also referred to as generalized anxiety disorder. According to the doctor Plaintiff appeared somewhat improved.

Plaintiff also has major depressive disorder which is active since the escalation of Plaintiff's medical problems in March 2002. Plaintiff also has chronic pain syndrome or somatoform disorder which appears to be mild. [R. at 375]. Dr. Rawlings noted that he considered Plaintiff's testimony credible. [R. at 377]. He noted that Plaintiff had moderate impairments of activities of daily living and on some days marked, with overall social functioning mild but on some days moderate. [R. at 378]. Plaintiff's concentration would be on average, moderate, but on some days marked. [R. at 378]. Dr. Rawlings discussed

Plaintiff's medical record but noted that specifics of edema, swelling, or gait problems were "out of his area."  [R. at 383].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. § 404.1520.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by

---

[3/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 1521.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The

---

[4/]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

## III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ noted that prior to December 31, 2003, Plaintiff was limited to performing a range of sedentary work due to her back pain. [R. at 19]. The ALJ found that even if Plaintiff could not return to her past relevant work prior to this date, that based on the testimony of a vocational expert, Plaintiff could perform work in the national economy. [R. at 19]. The ALJ found that Plaintiff had transferable skills. [R. at 20].

The ALJ found that, beginning January 1, 2004, Plaintiff was restricted to a range of sedentary work.  In addition, the ALJ noted that Plaintiff had numerous mental restrictions, including an inability to maintain attention and concentration, perform activities within a schedule, and interact with the general public.  Because of Plaintiff's mental limitations, the ALJ found that Plaintiff lacked transferable skills.  Based on the Grids, the ALJ concluded Plaintiff was disabled beginning January 1, 2004.  [R. at 20].

## IV.  REVIEW

Plaintiff asserts that the ALJ erred because the ALJ did not properly determine the onset date of Plaintiff's disability. Plaintiff notes that if the onset date is ambiguous, the ALJ should call a medical advisor to assist in the determination of the onset date.

Plaintiff asserts that the ALJ made clear that he arrived at an onset date of January 1, 2004 because Plaintiff's x-rays of her back in June 2004 indicated osteoarthritis, and six months prior to the x-rays was January 1, 1004. The ALJ therefore inferred a January 1, 2004 onset date.

-- 10 --

Plaintiff suggests that this process was incorrect. Plaintiff notes that Plaintiff complained of and received medication for arthritic pain prior to her alleged onset date. Plaintiff observes that concluding that the arthritis went from moderate to severe and marked in a period of six months is not supported by the evidence. Plaintiff maintains that the date of onset, from the medical records is ambiguous. And that, absent the opinion of a medical expert the ALJ erred by inferring an onset date of six months prior to June 2004.

Defendant initially asserts that in this case the ALJ did consult a medical expert. Defendant's reference is to Dr. Rawlings, who is a <u>mental</u> medical expert. Plaintiff asserts that the ALJ erred in determining the onset date of Plaintiff's osteoarthritis. Obviously an expert testifying as to Plaintiff's mental health would be of little assistance in determining the onset date of Plaintiff's arthritis. In fact, Dr. Rawlings testified that many of the specifics of Plaintiff's physical medical condition were outside of the area of his expertise. [R. at 383].

Defendant also maintains that the requirement that a medical expert be consulted is reserved for those cases in which the medical record is silent as to Plaintiff's medical condition and an expert is needed to extrapolate from the available medical records. Both parties refer the Court to Social Security Ruling 83-20.

In determining the onset of a disability of nontraumatic origin, the Social Security Rulings provide that the starting point is the claimant's allegations of her onset date. The second factor is the work history – or the day in which the impairment(s) caused the individual to stop working. The third consideration is the medical evidence.

> Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the

>onset of disability. The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling.  With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available.  In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.  Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began (see example under heading, "Precise Evidence Not Available--Need for Inferences"). In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available.  When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy.   However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

S.S.R. 83-20.  This section, discussing onset, specifically refers to the section titled "Precise Evidence Not Available – Need for Inferences," noting that consideration of vocational factors may be of assistance.  In that section the Ruling notes that in inferring an onset date, consultation of a medical advisor may be necessary.  *See* S.S.R. 83-20 (In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed

judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.).  SSR 83-20 does not preclude the testimony of a medical advisor, and the testimony of a medical advisor may be of assistance in a case in which the medical evidence, the Plaintiff's alleged onset date, and the evidence of when Plaintiff stopped working is not conclusive. Furthermore, as SSR 83-20 provides, the "established onset date must be based on the facts <u>and can never be inconsistent with the medical evidence of record</u>."  SSR 83-20 (emphasis added).

The Court concludes that this case must be reversed.  First, it is difficult to ascertain from the ALJ's decision the basis for the ruling by the ALJ.  Second, the discussion of the ALJ in the hearing does not seem to be fully consistent with the ALJ's decision.  Third, the Court is concerned with portions of the hearing transcript.

The ALJ found, initially, that Plaintiff was restricted to a range of sedentary work prior to December 31, 2003.  [R. at 19].  Presumably, because the ALJ provided no other specifics as to Plaintiff's limitations, Plaintiff's ability to work could be determined based on application of the Grids.  The ALJ generally noted Plaintiff's past relevant work as qualifying as sedentary, light and medium with Plaintiff therefore able to return to her past relevant work.  The ALJ did not discuss the "three parts" of the Step Four analysis.  However, the ALJ made an "alternative finding" that Plaintiff could work at Step Five.  Based on the testimony of a vocational expert, the ALJ noted he gave a set of hypothetical facts "identical

to claimant's condition as it is set out in the evidence and set forth in this opinion." [R. at 19].

During the hearing, the ALJ asked if an individual, given the same age, education and work experience as Plaintiff, but limited to standing or walking six hours in an eight hour day and frequently lifting no more than 10 pounds would be able to work. The vocational expert stated that such an individual could perform Plaintiff's past sedentary work. [R. at 388]. When the ALJ added in the limitations placed on Plaintiff by Dr. Rawlings, the vocational expert noted that such limitations eliminated work for Plaintiff. [R. at 389]. The record is less than clear with regard to the ALJ's hypothetical questions and the vocational expert's answers.

The ALJ additionally concluded that Plaintiff was 62 with 12 years education and possessed transferrable skills. Based on the application of the Grids, the ALJ noted that Plaintiff was "disabled." However this statement in the ALJ's opinion contradicts the ALJ's findings. The Court concludes that this statement is probably a typographical error. However, the ALJ's decision is still not supported by substantial evidence.

The ALJ then finds that beginning January 1, 2004 Plaintiff was restricted to sedentary work, but that this restriction coupled with her mental impairments negated Plaintiff's transferable skills rendering Plaintiff disabled. The decision contains no discussion of how Plaintiff determined the January 1, 2004 date, but seems to link that date to the erosion of Plaintiff's transferrable skills due to a mental impairment.

In the hearing, the ALJ discussed, to a limited degree, his finding that Plaintiff was disabled beginning in 2004.

-- 14 --

> I'm going to find that Ms. Sparks is entitled to disability, but I will not find that it arose in March of '02. instead, it appears that her complaints of back pain worsened in '04, and the record is very clear, despite her testimony, that there is virtually perhaps two instances in the record where there is edema. And so it cannot be substantiated in the record. She's urged to exercise at one point, which is not consistent with the level of pain that she presents. . . .
> [T]he first objective evidence of the back are the x-rays, which evidentially, you asked her to tell her doctor she needed. The record indicates the attorney wanted the x-rays done. And those, of course, come in '04. It looks like June of '04.
> And if you look at the progression and the lack of evidence of – which in my mind, substantiate her complaints at an earlier point in time, it seems to me the appropriate thing to do is to acknowledge that the back pain has gradually gotten worse and apply Social Security ruling SSR 83-20, which allows us to retrospectively acknowledge a progressive ailment six months earlier than the objective evidence of it, and so that would take it back to January of '04.

[R. at 392-93].

Therefore, in his written decision, the focus of the ALJ is on the mental impairment in some manner negating transferable skills and rendering Plaintiff disabled pursuant to the Grids. During the hearing, the ALJ focused on Plaintiff's osteoarthritis stating that it was disabling as of July 2004 and inferring an onset date of six months prior.

SSR 83-20 requires that the ALJ's decision must be based on the facts and <u>never</u> be inconsistent with the medical evidence of record. If the osteoarthritis is the basis of the ALJ's decision, as Plaintiff points out, the record contains some evidence of osteoarthritis in October 2003, which is potentially inconsistent with the ALJ's conclusions. If the mental impairment negating the transferable skills is the basis of the ALJ's decision, the record contains an examination in May 2003 in which a doctor diagnosed Plaintiff with various depressive and anxiety disorders. The ALJ does not reconcile these records and does not

provide a basis for determining the "onset" of Plaintiff's mental impairment as of January 1, 2004.

The Court concludes that the ALJ's decision is not supported by substantial evidence. In one instance, Plaintiff asks the ALJ if he can clarify what he means by a term that is unfamiliar to her. The ALJ answers "no" and directs the Plaintiff to answer the question. [R. at 342-43]. On remand, the Court urges the ALJ to develop the record in such a manner that the record is clear that the Plaintiff understood and answered questions to the best of Plaintiff's ability.

Dated this 14th day of April 2006.

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge